UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN   DIVISION

| | | |
|---|---|---|
| CAMILLA THOMPSON, *et al.*, | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | |
| | ) | 7:09-CV-89-H |
| BANK OF AMERICA, *et al.*, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants | ) | |
| ———————————————— | ) | |
| | | |
| 2433 SOUTH BOULEVARD, LLC, *et al.*, | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | |
| | ) | 7:10-CV-28-H |
| BANK OF AMERICA,   *et al.,* | ) | |
| | ) | |
| Defendants | ) | |
| ———————————————— | ) | |

## MEMORANDUM AND RECOMMENDATION

This cause comes before the Court upon the following motions in Thompson, *et al.*,

v. Bank of America   *et al.*, 7:09-CV-89-H:

1) Defendant Branch Banking and Trust Company of South Carolina's

motion to dismiss (DE-44);

2) Defendant Bank of America's motion to dismiss (DE-47);

3) Defendant Maryville Partners, Inc.'s motion to dismiss (DE-50);

4) Defendants R.A. North Development, Inc.'s, R.A. North Development I,

Inc.'s , Randolph Allen's, William Allen's, and Southeastern Waterfront Marketing, Inc.'s motion to dismiss (DE-57);

5) Defendant Carolina First Bank's motion to dismiss (DE-68);

6) Defendant RBC Bank (USA)'s motion to dismiss (DE-71);

7) Defendant Craven's Grant Homeowners Association, Inc.'s motion to dismiss or in the alternative to compel arbitration (DE-76).

8) Plaintiffs' motion for leave to file a third amended complaint (DE-129);

9) Defendant SunTrust Bank's motion to dismiss (DE-157);

10) Plaintiffs' motion to vacate voluntary dismissal with prejudice as to Defendant Richard Mace Watts (DE-211); and

11) Plaintiffs' motion for leave to amend to correct misnomer (DE-238).

In 2433 South Boulevard, LLC, *et al.*, v. Bank of America, *et al.*, 7:10-CV-28-H, the following motions are also before the Court:

1) Defendant Maryville Partners, Inc.'s motion to dismiss (DE-143);

2) Defendant Craven Grant Homeowners' Association, Inc.'s motion to dismiss (DE-145);

3) Defendant Bank of America's motion to dismiss (DE-149);

4) Defendant Berthadale R. Best's motion to dismiss (DE-155);

5) Defendants Cannonsgate Investment, LLC's and Lanny T. Wilson's motion to dismiss (DE-167);

6) Defendant Jennifer C. Parker's motion to dismiss (DE-169);

7) Defendants Branch Banking and Trust Company of South Carolina's

and Branch Banking and Trust Company's motion to dismiss (DE-189);

8) Plaintiffs' motion for leave to amend to correct misnomer (DE-196);

9) Defendant SunTrust Banks, Inc.'s motion to dismiss (DE-199);

10) Defendant Suburban Federal Savings Bank's motion to dismiss (DE-203);

11) Defendant Emily L. Adams' motion to dismiss (DE-216);

12) Defendants William Allen's, Southeastern Land Sales, Inc.'s, and Southeastern Waterfront Marketing, Inc.'s motion to dismiss (DE-218);

13) Defendant Richard Mace Watts' motion to dismiss (DE-224); and

14) Bank of the Ozarks' motion to dismiss[1] (DE-232).

Each of these motions has been referred to the undersigned and are ripe for adjudication. Thompson, et al., v. Bank of America, et al., 7:09-CV-89-H, (DE-248); South Boulevard, LLC, et al., v. Bank of America, et al., 7:10-CV-28-H, (DE-246).

As an initial matter, the undersigned notes that Federal Rule of Civil Procedure 42(a) grants the Court authority to consolidate actions involving a common question of law or fact to avoid unnecessary costs or delay. Fed.R.Civ.P. 42(a). The decision to consolidate is committed to the Court's discretion and consolidation may be initiated *sua sponte*. *See* Arnold v. Eastern Air Lines, Inc., 681 F.2d 186, 192-193 (4th Cir. 1982). *See also*, Henderson v. United States, 2008 WL 1711404, at * 5 (W.D.Va. April 11, 2008). All of the claims alleged by Plaintiffs in both cases arise from a common set of facts. As will become apparent after the referred motions are analyzed, the legal issues presented

---

1 Bank of the Ozarks has filed its motion to dismiss as successor in interest to and assignee of certain assets and liabilities of Defendant Woodlands Bank.

overlap almost completely. Likewise, there is little likelihood of prejudice to any party if the cases are consolidated. Therefore, it is RECOMMENDED that Plaintiffs' actions be consolidated pursuant to Rule 42(a). In the interim, however, the undersigned will discuss both cases separately.

## I. Thompson, *et al*., v. Bank of America *et al,* 7:09-CV-89-H

## Background

In Thompson, *et al*., v. Bank of America *et al*., 7:09-CV-89-H, Plaintiffs bring an action for damages and rescission arising out of the sale of real property to the Plaintiffs by all Defendants acting in concert with one another in an allegedly fraudulent scheme (DE-19, pg. 3). Plaintiffs have already amended their original complaint twice. In their Second Amended Complaint, Plaintiffs seek relief pursuant to: 1) the Interstate Land Sales Full Disclosure Act, 15 U.S.C. §1701, *et seq.*; 2) the North Carolina Deceptive Trade Practices Act, N.C. GEN. STAT. §75-1 *et seq.*; 3) the South Carolina Deceptive Trade Practices Act, S.C. Code Ann. §39.5.140; 4) the North Carolina Mortgage Lending Act, N.C. GEN. STAT. §53-243; and 5) the South Carolina Licensing Requirements Act, S.C. CODE ANN. §40-58-10. *Id.* Furthermore, Plaintiffs allege: 1) common law fraud; 2) fraud in the inducement; 3) constructive fraud; 4) breach of fiduciary duty; 5) negligent misrepresentation; and 6) civil conspiracy to commit fraud. *Id* Finally, Plaintiffs also seek relief under the Declaratory Judgment Act, 28 U.S.C. §2201, *et seq*. (2009). *Id.*

The individual Plaintiffs are residents of: 1) Maryland; 2) Virginia; 3) Georgia; 4) North Carolina; 5) New Jersey; 6) Pennsylvania; 7) Wisconsin; 8) Florida; 9) New York; and 10) California. *Id.* at 7-21. The Complaint provides relatively little specific detail

as to how each individual Plaintiff was injured. Nonetheless, their allegations will now be summarized.

Generally, Plaintiffs contend that "beginning in early 2006, the Defendants acted together in various combinations to fraudulently induce the Plaintiffs to purchase property using high pressure, clearly false sales tactics, rigged appraisals and promises of early return on investments." *Id.* at 3-4. This scheme was allegedly "fueled by . . . a commission arrangement that compensated Lender Defendants on the basis of origination and servicing of such loans" *Id.* at 4. According to Plaintiffs, they are the victims of a fraudulent scheme, the object of which was to "flip" undeveloped lots, a process involving illegitimate sales that artificially increase property values. This, in turn, enticed Plaintiffs to purchase the lots at inflated prices. More specifically, the alleged fraud involved the sale of vacant lots in three new developments. Summerhouse On Everett Bay, located in Onslow County, and Cannonsgate, located in Carteret County, are both owned and developed by Defendants RA North Development and RA North Development I ("RAN" and "RAN I", or collectively, "RAN Defendants"). The third development, Craven's Grant, is located in Georgetown, South Carolina and is owned by Defendant Maryville Partners, Inc.("Maryville") or its assignee Cravensgrant II LLC. *Id.*

Plaintiffs argue that "Defendants conspired to lie to the Plaintiffs about the value of the lots" and that the "Defendants sold grossly overpriced property . . ." *Id.* However, Plaintiffs concede that they did not purchase these lots from named Defendants. *Id.* at 5. Instead, Plaintiffs purchased their lots from one of several interim corporate developers ,

including, *inter alia,* non-party Total Realty Management ("TRM")[2] *Id.* at 5. These interim corporate developers would acquire title from Defendant RA North or Defendant Maryville and immediately "flip" the property for a profit. *Id.* Plaintiffs' funds were used to pay off Defendants RA North and Maryville. *Id.* In other cases, the interim corporate developers would sell property but later buy the property back at 90% of the sales price simply to re-flip the property again. *Id.* Thus, in summary, the Complaint alleges that TRM's scheme lasted from 2006 to 2007, involved three subdivisions in North and South Carolina, and injured over 90 Plaintiffs who purchased about 65 lots.

Notably, most of Plaintiffs' allegations do not refer to specific Defendants. Rather, the Complaint frequently makes allegations against so-called "Defendant Corporate Developers", "Individual Defendant Developers", "Promoter Defendants" and "Defendant Lenders." For example, Plaintiffs assert that "Defendant Lenders actively and deliberately colluded with the appraisers and the Developers to invent phony values for properties, often at the direction of the Developer Defendants many of whom are named as Defendants in their individual capacity." *Id.* at 6. Likewise, Plaintiffs argue that "Defendant Lenders were careless about underwriting standards, disregarding their own internal underwriting guidelines and that the culture existing at the time of 'easy credit' allowed for little or no scrutiny of the underwriting process." *Id.*

Regardless, Plaintiffs assert that Defendant RAN I acquired approximately 214.79 acres in Onslow County, North Carolina on June 20, 2006 for not less than $12,500,000.

---

2 TRM has since entered bankruptcy, and therefore Plaintiffs are "unable to recover against . . .[those] . . . who were the principal players in this alleged investment scheme." Feeley v. Total Realty Management, 660 F. Supp. 2d 700, 716, fn. 18 (E.D.Va. 2009).

*Id.* at 28. This undeveloped parcel was subdivided and came to be known as the "Summerhouse on Everett Bay" subdivision. Defendant RAN I acquired Summerhouse through mortgage financing and was subject to a blanket lien to be released upon the sale of a certain volume of lots. Soon thereafter, RAN I began selling the improved lots in the range of $140,000 to $325,000. *Id.*

Likewise, Defendant RAN acquired approximately 300 acres in Carteret County, North Carolina, which came to be known as the "Cannonsgate on Bogue Sound" subdivision sometime prior to July 5, 2005 for at least $12,000,000. RAN acquired Cannonsgate through mortgage financing and was subject to a blanket lien to be released upon the sale of a certain volume of lots. Soon thereafter, RAN began reselling the improved lots in the range of $199,000 to as much as $700,000 for waterfront lots. *Id*. at 28-29.

Defendant Maryville acquired property in Georgetown County, South Carolina, which came to be known as the "Craven's Grant" subdivision sometime prior to April 7, 2006 for approximately eight million dollars. Maryville acquired Craven's Grant through mortgage financing and was subject to a blanket lien to be released upon the sale of a certain volume of lots. Soon thereafter, Maryville began reselling the improved lots in the range of $199,000. At some point during 2006-2007 Maryville conveyed all or part of its property to an entity known as Cravensgrant II, LLC which is a limited liability company wholly owned by Maryville. *Id*. at 29.

Following these acquisitions Plaintiffs contend that RAN and Maryville were approached by various developers, including, *inter alia*, TRM, with a scheme to sell the

property in Summerhouse, Cannonsgate and Craven's Grant. *Id.* Specifically, this scheme allegedly required "that the developers fractionalize the size of the lots and then allow TRM . . . [and other developers] to artificially inflate the existing prices by creating three or more phony purchases to straw men acting at the behest of TRM . . . [and the other developers] at prices 2.5 to 3 times the amount of the fair market value." *Id.* at 29-30. Plaintiffs further allege that, as part of this scheme the "Developer Defendants" and "Promoter Defendants" engaged "in a widespread, highly publicized marketing plan to induce persons living outside of North or South Carolina to invest in the Subdivisions." *Id.* at 30. Again, Plaintiffs concede that "TRM was chiefly and principally involved in the initial scheme to sell the subdivision lots for excessive prices." *Id.* at 31.

Ultimately, however, Plaintiffs assert that the "Developer Defendants" "utilized an elaborate sales pitch promising the Plaintiffs a substantial return on their investment in 6-18 months." *Id.* at 32. Plaintiffs concede that "no single Plaintiff in this action would have possibly been able to maintain the debt schedule on the loan application and the debt service associated with these transactions without a sale, as promised, within 6 to 18 months." *Id.* at 35 (emphasis in original omitted).

Continuing their practice of failing to make specific allegations against individual Defendants, Plaintiffs later allege that "all Lender Defendants" engaged in unfair underwriting practices. These practices were allegedly encouraged by the compensation awarded to originating loan officers employed by the "Lender Defendants." *Id.* at 38. Specifically, Plaintiffs argue that "Lender Defendants" "knew, or in the exercise of reasonable diligence should have known, that the market for the three developments at

issue in this case had a finite limit to the value that a purchaser would ultimately place upon them. . . . [m]oreover the Lender Defendants knew that no market could support a Ponzi like scheme of ever increasing prices, made through flip transactions, with increasing prices, forever." *Id*. at 38-39.

Ultimately, Plaintiffs essentially complain that "Defendant Lenders" failed to warn Plaintiffs of the inherent risk involved in the investment scheme Plaintiffs chose to participate in. *Id.* at 43. These claims have little factual support, however. For example, the Second Amended Complaint does not precisely identify the communications which facilitated this alleged fraud. Likewise, the Second Amended Complaint alleges that "[a]s part of the overall scheme to fraudulently misrepresent the fair market value of the lots for the purpose of selling the lots at grossly inflated prices, the Developer Defendants and Promoter Defendants began engaging in a widespread, highly publicized marketing plan to induce persons living outside North or South Carolina to invest in the subdivisions." *Id.* at 30. Again, however, the Second Amended Complaint does not precisely describe the misrepresentations made by any named Defendant, nor does the Second Amended Complaint contain a well-pleaded factual allegation establishing that the named Defendants knew of TRM's marketing misrepresentations. Furthermore, the Complaint contains no well-pleaded allegations that the named Defendants knew of the misrepresentations that TRM made to induce Plaintiffs to purchase the properties at the prices they did. In summary, the Second Amended Complaint is replete with conclusory allegations of group lender knowledge of allegedly false loan applications and rigged appraisals. However, no facts supporting these conclusions are alleged.

## Analysis

## Motions to Dismiss

The instant motions are filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint . . ." Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, a plaintiff must " 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). The facts alleged must "raise a right to relief above the speculative level," and the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U .S. at 555, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Id. A complaint may survive a motion to dismiss only if it "states a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." Id. at 1950. Without such "heft," claims cannot establish a valid entitlement to relief, as facts that are "merely consistent with a defendant's liability" fail to nudge claims "across the line from conceivable to plausible." Id. at 1947-1951 (quotations omitted).

Similar allegations[3] were considered by the United States District Court for the Eastern District of Virginia in Feeley v. Total Realty Management, 660 F. Supp. 2d 700 (E.D.Va. 2009). Indeed, some of the same Defendants are named in both the instant case and Feeley. Although the undersigned is not bound by Feeley, the decision of a sister court within the Fourth Circuit on nearly identical issues certainly merits consideration and discussion. Despite Plaintiffs' protest that the Feeley decision is "naïve in the extreme," the undersigned has reviewed that court's analysis and finds it to be persuasive, (DE-78, pg. 2).

In Feeley, a large number of individuals asserted that they were lured by Total Realty Management into an investment in unimproved land in North Carolina and South Carolina. TRM allegedly asserted the individual investors could purchase the land with little or no money down and after the purchase "flip" or re-sell at a profit. Feeley, 660 F. Supp. 2d at 703. The complaint in Feeley was 326 pages long, and asserted 45 claims on behalf of 127 plaintiffs against 26 defendants. Id. at 704. Specifically, "[t]he foundation of . . . [the Feeley] action . . . [was] Plaintiffs' purchase from TRM of unimproved lots in North and South Carolina for the purpose of resale . . . Plaintiff investors assert they met with representatives of TRM who presented an investment opportunity where the plaintiffs could buy unimproved land in area ripe for development with little or no money down that the plaintiffs could easily resell at a profit." Id. at 705. While analyzing several dispositive motions, the Feeley court observed:

There are 5 issues before the Court. The first issue is whether the

_____

3 Plaintiffs allege that "the present complaint and the Feeley complaint are substantially and materially different"(DE-78, pg. 1). The undersigned disagrees.

Complaint's allegations that Banks colluded with corrupt mortgage loan officers and corrupt appraisers to enter into risky loans that would fail sufficiently states a plausible claim. The second issue is whether the Complaint states sufficient facts in support of the alleged agency relationships between the banks and developers and Total Realty Management ("TRM") where these agency relationships form the predicate for liability against these defendants. The third issue is whether the banks are liable under the Interstate Land Sales Act ("ILSA") where the Act is explicitly applicable to developers, not banks. The fourth issue is whether Plaintiffs claims alleging civil conspiracy to defraud and conspiracy to commit fraud are subject to the particularity requirements of Rule 9(b), and if so, whether Plaintiffs have made sufficient allegations to sustain this claim. The fifth issue is whether the place of the wrong for purposes of an unfair trade practice claim is the location of the settlement or the location of Plaintiffs' residences.

*Id.* at 704.

Ultimately, the <u>Feeley</u> court determined that the complaint failed to state a claim.

Notably, the <u>Feeley</u> court applied an <u>Iqbal</u> analysis to claims virtually identical to the

claims present in the instant case. In conducting this analysis, the <u>Feeley</u> court stated:

Plaintiffs claim as a threshold matter that the Banks colluded with TRM, corrupt real estate appraisers and bank loan officers to arrange for unsuspecting investors to enter into loans the investors could never pay, in land they could never sell, that was overvalued; and now that TRM has declared bankruptcy, that the Banks must charge off the investor loans and repay the investors. What does the bank get out of this, loan fees, foreclosed upon unimproved land to carry on their books? To the extent that Plaintiffs have essentially alleged that the banks and Maryville were in cahoots with TRM, as the basis for Liability these allegations are simply implausible.

*Id.* at 708.

Therefore, "Defendants' Motions to Dismiss the Amended Complaint . . . [were] granted

because the plaintiffs claims . . .[did] not meet the <u>Ashcroft v. Iqbal</u> plausibility standard

required to survive a motion to dismiss because the facts alleged on the face of the complaint . . . [did] not allow for a reasonable inference that the defendants are liable to Plaintiffs for their individual investment decisions." *Id.* at 707. In addition, plaintiffs' claims arising under the Interstate Land Sales Act were dismissed "because the Act applies to developers, not financial institutions, and the Second Amended Complaint fails to present plausible allegations that the banks actively participated in and aided the advancement of the alleged fraudulent scheme so as to justify considering these financial institutions developers for purposes of establishing liability under the Act." *Id.* at 709. Likewise, plaintiffs' fraud claims were dismissed "because corporations cannot conspire with their agents, the claims are not plead with sufficient particularity to comport with Rule 9(b), and Plaintiffs have failed to allege facts that would support a finding that a meeting of the minds occurred as is required to support a conspiracy claim." *Id.* at 711. Plaintiffs' unfair trade practices claims were also dismissed. *Id.* at 711. Finally, the <u>Feeley</u> court dismissed Plaintiffs' claims with prejudice and without leave to amend. The <u>Feeley</u> court did so "because Plaintiffs have already devoted multiple efforts and hundreds of pages to attempting to sufficiently plead their claims and set forth the necessary and relevant facts." *Id*. at 715.

As noted above, the undersigned finds the <u>Feeley</u> court's decision to be sound, and thus much of its reasoning is adopted. First, the factual issues are virtually identical. <u>Feeley</u> is particularly compelling in that it involves lots in the same subdivisions, many of the same defendants, the same alleged "scheme" and generally the same claims for relief. The instant Complaint suffers from the same flaws as those described in <u>Feeley</u>. Like the

<u>Feeley</u> complaint, the instant Complaint fails to plead sufficient facts to state a claim for relief that is plausible on its face.    In addition, Plaintiffs' claims are replete with conclusory allegations which lump together numerous banks through the group-pleading designation "Lender Defendants".    Such pleading fails to satisfy the requirements of Rule 9(b) of the Federal Rules of Civil Procedure. Indeed, the chief culprit in Plaintiffs' allegations appears to be TRM, which has been placed into involuntary bankruptcy and is not a party to this litigation (DE-19, ¶ 78; DE-58, pg. 2).

Similarly, the United States District Court for the Western District of North Carolina has also determined that similar claims are meritless.  *Cf.*  <u>Goldstein v. Bank of America</u>*,* 2010 WL 1252641 (W.D.N.C. Jan. 19,2010) (dismissing RICO, fraud, unconscionability, RESPA, conspiracy, rescission, and breach of fiduciary duty claims against bank), *aff'd*, 2010 WL 1252629 (W.D.N.C. Mar. 24, 2010); <u>Skeels, et al. v. Bank of America, N.A.</u>, 2010 WL 143679 (W.D.N.C. January 7, 2010) (dismissing RICO, RESPA, conspiracy, rescission, and breach of fiduciary duty claims against bank).

In <u>Goldstein</u> it was alleged that a bank "engaged in a joint venture" in which they exceeded their "ordinary course of dealing, promotion, marketing and sale of lots." <u>Goldstein</u>, 2010 WL 1252641, at * 2.    Specifically, the bank allegedly "knowingly assisted, facilitated and furthered  . . .[a] fraudulent scheme  . . . [which included] knowingly and intentionally disseminat[ing]  . . .  materially false and misleading information."  *Id.*  Likewise, it was argued that the bank defendant was named in marketing materials as a "preferred/recommended lender".   *Id.*  Based on these contentions, the following causes of actions were asserted:   1)   RICO violations; 2) fraud;

3) unconscionability; 4) violations of the Real Estate Settlement Procedures Act; 5) civil conspiracy; 6) rescission; and 7) breach of fiduciary duty. *Id.* Ultimately, the Goldstein court—citing Feeley—determined that these claims must fail "because they rest on an implausible factual contention . . . that [a bank] conspired or engaged in a joint venture with the developer, the object of which was to unlawfully enrich the developer at the expense not only of the lot purchasers, but at the expense of . . [the bank]. *Id.* at * 3. The Goldstein court further noted that "[t]he logical flaw with plaintiffs' claims is that . . . [a bank] conspired to harm itself by making substantial loans that would end up substantially unsecured if the alleged conspiracy was successful." *Id.* In addition to holding that these claims failed to meet the Twombly/Iqbal standard, the Goldstein court also concluded, *inter alia*, that plaintiffs': 1) RICO claims were conclusory and improperly pled; and 2) fraud and civil conspiracy claims were implausible and further did not meet the requirements of Rule 9(b) of the Federal Rules of Civil Procedure. Finally, the Goldstein court dismissed the breach of fiduciary duty claim because "there is no fiduciary relationship between a lender and a borrower under North Carolina law." *Id.* at * 10 (*citing* Branch Banking & Trust v. Thompson, 418 S.E. 2d 694, 699 (N.C. App. 1992). Based on these findings, the complaint in Goldstein was dismissed in its entirety. *Id.*

Likewise, Skeels addressed identical issues and dismissed plaintiffs' complaint for the same reasons discussed above. Skeels, 2010 WL 143679.

The undersigned finds the analysis in Feeley, Goldstein, and Skeels persuasive and recommends that all referred motions to dismiss be granted. The specific bases for these recommendations shall now be addressed in more detail.

First, for the reasons discussed during the analysis of the decisions in <u>Feeley</u>, <u>Goldstein</u>, and <u>Skeels</u>, the undersigned hereby finds that each of Plaintiffs' claims fails to meet the <u>Twombly</u>/<u>Iqbal</u> standard.

In addition, Plaintiffs assert claims pursuant to the Interstate Land Sales Full Disclosure Act ("ILSA"), 15 U.S.C. §1701, *et seq.* ILSA is a federal law regulating interstate land sales by developers and their agents. *Id.* Plaintiffs' ILSA claims refer only to "Developer Defendants" and are not pled with specificity. Moreover, "the Interstate Land Sales Act . . . applies to developers, not financial institutions." <u>Feeley</u>, 2009 WL 2902505, at *6. "Civil liabilities" under ILSA are set forth in 15 U.S.C. § 1709, which only provides for a cause of action "against the seller or lessor." 15 U.S.C. § 1709(b). Thus, "causes of action under ILSA are limited to persons who directly purchase their property from a developer or a developer's agent." <u>Gibbes v. Rose Hill Plantation Development Co.</u>, 794 F. Supp. 1327, 1333-34 (D.S.C. 1992). Here, it is clear Plaintiffs purchased their lots from, *inter alia*, TRM and not any moving Defendant. Therefore, the Second Amended Complaint fails to sufficiently allege that any moving Defendant either: 1) had a contract with any of the Plaintiffs; or 2) sold any lots to the Plaintiffs. None of Plaintiffs' allegations demonstrate that any moving Defendant is a developer. Nor have Plaintiffs sufficiently alleged that TRM and others sold their lots to Plaintiffs as agents for any named Defendant. Furthermore, as an additional basis for dismissal, ILSA contains a "developer-to-developer" sales exemption, which specifically exempts the application of ILSA to "the sale or lease of lots to any person who acquires such lots for the purpose of engaging in the business of constructing residential, commercial, or industrial buildings, or

for the purpose of resale or lease of such lots to persons engaged in such business." 15 U.S.C. § 1702(a)(7). The sales at issue in Plaintiffs' Second Amended Complaint fit within this exemption because Plaintiffs' concede they purchased these properties for the purpose of resale.

It also appears that portions of Plaintiffs' ILSA claims are time barred. Plaintiffs argue that they are entitled to rescission of their contract. ILSA provides for the revocation of contract as follows:

> In the case of any contract or agreement for the sale or lease of a lot for which a property report is required by this chapter and the property report has not been given to the purchaser or lessee in advance of his or her signing such contract or agreement, such contract or agreement may be revoked at the option of the purchaser or lessee *within two years* from the date of such signing, and such contract or agreement shall clearly provide this right.

Section 1711(b) of ILSA provides for a three-year statute of limitations for claims seeking relief other than rescission. Orsi v. Kirkwood, 1992 WL 511406 at 3-4 (E.D.Va.1992), aff'd, 999 F.2d 86 (4th Cir. 1993). Plaintiffs' Second Amended Complaint fails to sufficiently allege that any Plaintiff revoked their contract to purchase the property within that time frame.

For all these reasons Plaintiffs' ILSA claims must fail.

Furthermore, Plaintiffs allege several fraud or conspiracy to commit fraud claims. "To establish a prima facie fraud claim, the plaintiff must prove the following elements by clear and convincing evidence: (l) false representation or concealment of a material fact; (2) reasonably calculated to deceive; (3) made with the intent to deceive; (4) resulting in injury or detrimental reliance." Feeley, 2009 WL 2902505, at *8 (quoting 37 AMJUR. 2D

Fraud and Deceit § 475 (2009)). Such claims must also satisfy the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) states: "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake . . . [m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." A party asserting fraud must identify, with particularity, both the statements alleged to have been misleading or fraudulent and the reasons why such statements were misleading. Krispy Kreme Doughnut Corp. v, Advantage Group Enter., Inc., 2008 WL 5216227, at *3 (M.D.N.C. Dec, 11,2008). The "circumstances required to be pled with particularity under Rule 9(b) are the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999)(internal quotations omitted). Even allegations of fraudulent omission or concealment must be pled with particularity. Chase Fed. Bank v. Am. Bankers Ins. Co. of Florida, Inc., 1989 WL 80282, at *3 (E.D.N.C. Feb. 15, 1989). The plaintiff must allege: 1) the relationship or situation giving rise to the duty to speak; 2) the event(s) triggering the duty to speak, and/or the general time period over which the relationship arose and the fraudulent conduct occurred, 3) the general content of the information that was withheld and the reason for its materiality, 4) the identity of those under a duty who failed to make such disclosures, 5) what those defendant(s) gained by withholding information, 6) why plaintiff's reliance on the omission was both reasonable and detrimental, and 7) the damages proximately flowing from such reliance. Breeden v. Richmond Community College., 171 F.R.D. 189, 195 (M.D.N.C. 1997), *citing*, Frank M.

McDermott, Ltd. v. Moretz, 898 F.2d 418, 421 (4th Cir. 1990)(other citations omitted). One of Rule 9(b)'s key purposes "is to eliminate fraud actions in which all the facts are learned after discovery." Harrison, 176 F.3d at 784. Where there are multiple defendants, plaintiffs must allege all claims with particularity as to each defendant. Adams v. NVR Homes, Inc., 193 F.R.D. 243, 251 (D. Md. 2000). However, "a court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied 1) that the defendant has been made aware of the particular circumstance for which she will have to prepare a defense at trial, and 2) that plaintiff has substantial prediscovery evidence of those facts." Id. at 250, citing Harrison, 176 F.3d at 784.

Ultimately, Plaintiffs' pleadings do not satisfy these requirements. Tellingly, group pleadings—used here by Plaintiffs—have been rejected by the Fourth Circuit in this context. Juntti v. Prudential-Bache Securities, Inc., 1993 WL 138523, at * 2 (4th Cir. May 3, 1993)(unpublished decision). As in Feeley, the instant Plaintiffs have failed to satisfy the heightened pleading requirements of Rule 9(b). Aggregated allegations fail two of the essential purposes of Rule 9(b): they are "insufficient either to provide a defendant with fair notice of the claim against him or to protect a defendant from harm to his reputation or goodwill." Id. This provides an additional basis for dismissing Plaintiffs' fraud and civil conspiracy to commit fraud claims.

Plaintiffs' fraud and conspiracy to commit fraud claims could alternatively be dismissed because they fail to state a viable claim. In describing their fraud claims against several Defendants, Plaintiffs rely in part upon a theory of fraudulent omissions. See, DE-19, ¶ 250, 322. As noted above, a plaintiff alleging fraudulent omission must plead

facts demonstrating "the relationship or situation giving rise to the duty to speak . . . [and] the event or events triggering the duty to speak."   Nixon v. Alan Vester Auto Group, 2008 WL 4544369, at *5 (M.D.N.C. October 8, 2008).   Plaintiffs' claims   rely upon circumstances in which Defendants owed no duty to Plaintiffs.   As noted in Nixon:

> Plaintiff is attempting to foist her own responsibility for making an unwise decision on [her lender]. This cannot be the basis for liability in a rational system of law. Consequently, . . . Plaintiff fails to show why [the lender] should bear total responsibility for her own self-imposed recent financial hardships.

> Nixon, WL 4544369, at *5.

Plaintiffs also fail to adequately allege specific affirmative misrepresentations.   The elements of common law fraud have already been summarized, and Plaintiffs' claims fail to meet these requirements because Plaintiffs fail to plausibly allege that Defendants acted with an intent to deceive.   Finally, Plaintiffs claims for fraud in the inducement and constructive fraud are also insufficiently pleaded.

Plaintiffs also assert various other claims (e.g. negligent misrepresentation and general negligence) which essentially argue that lenders owe "the prospective borrower a duty to disclose that the borrower may be making a bad deal or risky investment and/or a duty of care regarding the processes the bank uses to determine whether to approve a loan" (DE-45, pg. 27).   The undersigned finds that no such duties generally exists. [4]   Bank of

---

4 The undersigned agrees with the argument forwarded by several Defendants  that "the law of the state of each plaintiff's residence controls the tort claims . . ."(DE-45, pg. 16).  See, ITCO Corp. v. Michelin Tire Corp., Commercial Division, 722 F.2d 42, 49, fn. 11 (4th Cir. 1983).  See also, Jacobs v. Central Transport, Inc., 891 F. Supp. 1088, 1110 (E.D.N.C. 1995), aff'd in relevant part, rev'd in part, 83 F.3d 415, 1996 WL 223688 (4th  Cir. 1996). Where a plaintiff alleges financial injury arising out of state tort claims, the law of the state in which the plaintiff resided at time of the injury is typically applied, because that it is the location of the financial injury. See, e.g., Feeley, 660 F. Supp. 2d at 713 ("[A]ssuming that an injury was sustained by the plaintiffs, it took place in their home states, where the financial injury took place. Payments for overvalued property were made there.")

America v. Lykes, 2010 WL 2640454, at * 9 (W.D.N.C. May 20, 2010)(there is no fiduciary relationship between a lender and a borrower under North Carolina law). Fryfogle v. First Nat'l Bank of Greencastle, 2009 WL 700161, at * 8 (W.D.Va. March 17, 2009)(" the legal relationship between a borrower and a bank is a contractual one of debtor and creditor and does not create a fiduciary relationship between the bank and its borrower or creditor")(internal quotations omitted). Similarly, "[c]ourts have been exceedingly reluctant to find special circumstances sufficient to transform an ordinary contract relationship between a bank and its customer into a fiduciary relationship or to impose any duties on the bank not found in the loan agreement" Kuechler v. People's Bank, 602 F. Supp. 2d 625, 633 (D.Md. March 9, 2009)(internal quotations omitted). This includes imposing a duty of care for which there is no contractual basis. *Id.* As such, any such claims should be dismissed.

Several claims are alleged by Plaintiffs pursuant to the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §75-1 *et seq.* ("NCUDTPA"). These claims fail for a number of reasons. The elements of a claim for unfair and deceptive trade practices in violation of N.C. Gen. Stat. § 75-1.1 are: "(1) an unfair or deceptive act or practice, or an unfair method of competition, (2) in or affecting commerce, (3) which proximately caused actual injury to the plaintiff or to his business." Spartan Leasing v. Pollard, 400 S.E.2d 476, 482 (N.C. App. 1991). Thus, "[r]ecovery according to . . . [NCUDTPA] is limited to those situations when a plaintiff can show that plaintiff detrimentally relied upon a statement or misrepresentation and he or she suffered actual injury as a proximate result of defendant's deceptive statement or misrepresentation."

<u>Forbes v. Par Ten Group, Inc.</u>, 394 S.E.2d 643, 651 (1990) (citation omitted), *disc. review denied,* 328 N.C. 89, 402 S.E.2d 824 (1991). As already discussed, Plaintiffs have failed to properly allege these elements. For example, Plaintiffs' have not properly alleged reliance or proximate cause. <u>McLamb v. TP. Inc.</u>, 619 S.E.2d 577,582-83 (N.C. App. 2005) (as element of NCUDTPA claim, plaintiff must prove that challenged conduct proximately caused the injury). Plaintiffs broadly assert that "all Defendants" engaged in unfair or deceptive acts, but they do not sufficiently specify how any particular defendant acted in a unfair or deceptive manner. Moreover, NCUDTPA does not protect a foreign resident suing for an injury sustained outside North Carolina. <u>The 'In' Porters, S.A. v. Hanes Printables, Inc.</u>, 663 F. Supp. 494, 501-02 (M.D.N.C. June 11, 1987). Because many Plaintiffs do not reside in North Carolina, many of Plaintiffs' NCUDTPA claims are meritless for that reason alone. Finally, when a claim under the NCUDTPA is premised on fraud, the allegations are subject to the particularity requirement of Rule 9(b). <u>Smith v. Cent. Soya of Athens, Inc.</u>, 604 F. Supp. 518, 529-530 (E.D.N.C. 1985). Plaintiff's failure to meet those requirements has already been discussed.

Similarly, Plaintiffs also allege claims pursuant to the South Carolina Unfair Trade Practices Act ("SCUTPA") S.C. CODE ANN. § 39-5-10, *et seq*. These claims are also meritless. Again, many Plaintiffs are not residents of South Carolina and therefore not entitled to relief. Regardless, the intent of SCUTPA is to control and eliminate the large-scale use of unfair and deceptive trade practices within the state of South Carolina. *See*, <u>Noack Enter., Inc. v. Country Corner Interiors of Hilton Head Island, Inc.</u>, 351 S.E.2d 347, 349 (S.C. App. 1986). A South Carolina court has considered claims similar to

Plaintiffs' and held that such allegations are not SCUTPA violations. Robertson v. First Union Nat'l Bank, 565 S.E.2d 309 (S.C. App. 2002). The Robertson court held that a bank funding an under-collateralized loan and allegedly violating its internal loan procedures did not violate SCUTPA because the actions "would only cause harm to Bank, for it could find itself potentially obligated on a loan it would not otherwise make." *Id.* at 315, fn.2. In short, an unfair or deceptive act or practice that affects only the parties to a trade or a commercial transaction is generally outside the ambit of the SCUTPA. *Id.* Thus, Plaintiffs' SCUTPA claims should be dismissed.

Likewise, Plaintiffs' claims pursuant to the North Carolina Mortgage Lending Act must also fail. N.C. Gen. Stat. § 53-243. North Carolina's Mortgage Lending Act ("NCMLA"), N.C. Gen. Stat. § 53-243, *et. seq.*, has been repealed and replaced by the Secure and Fair Enforcement Mortgage Licensing Act ("SAFE"), N.C. Gen. Stat. § 53-244.010, *et. seq.* 2009 N.C. Sess. Laws 374 (H.B. 1523). Neither statute, however, creates a private cause of action. *See* Ahmed v. Porter, 2009 WL 2581615, at *24 (W.D.N.C. June 23, 2009) ("[T]he court cannot find a reported case in which it was held that [the MLA] provides a private cause of action."). The North Carolina Court of Appeals recently addressed a litigant's attempt to expand the NCMLA beyond the remedies provided therein. In re Bradburn, 681 S.E.2d 828, 830-31 (N.C. App. 2009). The court rejected the plaintiff's proposed expansion despite "recent extraordinary concerns about predatory lending and the 'mortgage crisis.'" *Id.* at 831. Even if a private cause of action did exist, any NCMLA claim still fails because Plaintiffs fail to properly allege that any Defendant violated the act.

Finally, Plaintiffs seek declaratory judgment against Defendant Craven's Grant Homeowners Association, Inc. ("Craven's Grant HOA"). Only five of the Plaintiffs assert claims related to Defendant Craven's Grant HOA. Plaintiffs seek declaratory judgment to determine whether or not Defendant Craven's Grant HOA can enforce the terms of a homeowners association agreement (DE-19, ¶ 326). Notably, Plaintiffs fail to allege the terms of this homeowners association agreement. Moreover, this claim again relies specifically on many of the same allegations that the undersigned has found to be inadequately plead. Thus, this claim should also be dismissed for failure to satisfy the Twombly/Iqbal standard. In the alternative, Defendant Craven's Grant HOA argues that this matter is subject to mandatory arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.* Each of the contracts at issue contains a binding arbitration provision (DE 76-5, pg. 8). Through the FAA, Congress has mandated the enforcement of arbitration agreements. Southland Corporation v. Keating, 465 U.S. 1, 10 (1984). In Vaden v. Discover Bank, 129 S. Ct. 1262 (2009) the Supreme Court noted:

> In 1925, Congress enacted the FAA "[t]o overcome judicial resistance to arbitration," Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006), and to declare " 'a national policy favoring arbitration' of claims that parties contract to settle in that manner," Preston v. Ferrer, 552 U.S. 346, ----, 128 S.Ct. 978, 983, 169 L.Ed.2d 917 (2008) (*quoting* Southland Corp. v. Keating, 465 U.S. 1, 10, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984)). To that end, § 2 provides that arbitration agreements in contracts "involving commerce" are "valid, irrevocable, and enforceable." 9 U.S.C. § 2. Section 4-the section at issue here-provides for United States district court enforcement of arbitration agreements. Petitions to compel arbitration, § 4 states, may be brought before "any United States district court which, save for such agreement, would have jurisdiction under title 28 ... of the subject matter of a suit arising out of the controversy between the parties." *See supra*, at ----, n. 3.

Vaden, 129 S.Ct. at 1271.

Moreover, arbitration is highly favored for its "simplicity, informality, and expedition." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 US. 614, 628 (1985). Therefore, under the FAA, a court must compel arbitration if it finds: (1) that a valid arbitration agreement exists between the parties, and (2) that the dispute before it falls within the scope of the agreement. *See*, Mitsubishi Motors Corp., 473 U.S. at 626-28; Glass v. Kidder Peabody & Co., 114 F.3d 446, 453 (4th Cir. 1997). The merits cannot be considered when deciding an arbitration motion. *See*, AT&T Technologies, Inc. v. Comm. Workers of Am., 475 US. 643, 649 (1986); Keystone Shipping Co. v. Masters, Mates & Pilots Pension Plan, 671 F. Supp. 367, 370 (D. Md. 1987). The FAA mandates that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983). "[T]he heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration . . [a] court should not deny a request to arbitrate an issue unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Drews Distrib., Inc. v. Silicon Gaming, Inc., 245 F.3d 347, 349-50 (4th Cir. 2001) (internal quotations and citations omitted). The presumption in favor of arbitration "is particularly strong when the arbitration clause in question is broad," as it is in this case. AT & T Tech., 475 U.S. at 650. Indeed, "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." Green Tree Financial Corp.-Alabama v. Randolph, 531 U.S. 79, 91 (2000). Therefore, the undersigned

recommends that, if not dismissed outright, Plaintiffs' claims against Defendant Craven's Grant HOA be stayed pending arbitration.

For these reasons, the undersigned finds that each of the referred motions to dismiss in <u>Thompson, *et al*., v. Bank of America *et al*.</u>, 7:09-CV-89-H should be granted. Specifically, these motions should be granted for the following reasons: 1) Plaintiffs' allegations do not meet the <u>Twombly</u>/<u>Iqbal</u> standard; 2) Plaintiffs fail to state an ILSA claim; 3) Plaintiffs' fraud and conspiracy to commit fraud based claims fail to satisfy the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure; 4) Plaintiffs fail to state a claim for breach of fiduciary duty, constructive fraud, negligent misrepresentation, or general negligence; 5) Plaintiffs fail to state either a NCUDTPA or a SCUTPA claim; and 6) Plaintiffs fail to state a NCMLA claim. The undersigned recommends that these dismissals be with prejudice.

**<u>Plaintiffs' motions to amend and other miscellaneous motions</u>**

Plaintiffs have also filed motions to amend their Complaint in this case. <u>Thompson, *et al*., v. Bank of America *et al*.</u>, 7:09-CV-89-H (DE's 129, 238); Before beginning a specific analysis of these motions, the undersigned reiterates that the <u>Feeley</u> court dismissed plaintiffs' claims with prejudice and without leave to amend. The <u>Feeley</u> court did so "because Plaintiffs have already devoted multiple efforts and hundreds of pages to attempting to sufficiently plead their claims and set forth the necessary and relevant facts." <u>Feeley</u>, 660 F. Supp. 2d at 715. Once again, the undersigned finds the reasoning of the <u>Feeley</u> court convincing.

Under Federal Rule of Civil Procedure 15(a)(2), "a party may amend its pleading

only with the opposing party's written consent or the court's leave . . . [and t]he court should freely give leave when justice so requires." However, leave to amend is properly denied when "the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986). Determinations of futility under Rule 15(a) are governed by the standard for motions to dismiss. Classen Immunotherapies, Inc. v. King Pharms., Inc., 403 F.Supp.2d 451, 459 (D.Md. 2005).

Plaintiffs' original Complaint has already been amended twice, and nearly identical claims have been filed in 2433 South Boulevard, LLC, et al., v. Bank of America, et al., 7:10-CV-28-H. The Complaint in 2433 South Boulevard, LLC, et al., v. Bank of America, et al., 7:10-CV-28-H has been amended once. Thus, Plaintiffs have had several opportunities to properly file a valid claim. However, each new attempt suffers from the same deficiencies as the previous filings. Plaintiffs nonetheless seek to file a yet another version of these claims, basing this request on their assertion that they have discovered new evidence. Plaintiffs contend that the "newly alleged facts of the proposed amendment are intended to respond directly and to rebut the assertions of defect in the claims of Plaintiffs' Second Amended Complaint, which were interposed by several of the Defendants in their respective motions to dismiss" (DE-130, pg. 1).

Specifically, Plaintiffs request leave to add allegations regarding an "elaborate, well orchestrated" racketeering scheme of an entirely new group of Defendants who are labeled as the "Allen Enterprise". This continues Plaintiffs' utter disregard for Rule 9(b) of the Federal Rules of Civil Procedure by pleading in conclusory terms through group

pleadings. Indeed, "[t]he primary difference between the Second and Third Amended Complaints is that Plaintiffs now downplay the pivotal role of the now-bankrupt TRM and TRM employees in this alleged scheme, and recast precisely the same alleged scheme by the same TRM actors as having been orchestrated by the conveniently solvent 'Allen Enterprise.'" (DE-174, pg. 3). Regardless, Plaintiffs contend that the "Allen Enterprise" "describes those persons or entities associated together for a common purpose of engaging in a course of conduct intended to defraud the Plaintiffs herein" (DE-130, pg. 7). After describing the "Allen Enterprise", Plaintiffs list approximately 20 named Defendants who comprise that enterprise.

Thus, Plaintiffs essentially seek to cure all the defects heretofore mentioned in their Second Amended Complaint (which they at least implicitly concede in their argument in support of the amendments) by adding civil clams pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq*. First, the United States District Court for the Western District of North Carolina has dismissed RICO claims in relatively similar contexts. *Cf.* Goldstein., 2010 WL 1252641 (W.D.N.C. Jan. 19,2010); Skeels, 2010 WL 143679 (W.D.N.C. Dec. 15, 2009). Likewise, the undersigned finds that this "newly discovered" evidence is at best remotely connected to the properties where the individual Plaintiffs purchased lots.

RICO "does not cover all instances of wrongdoing . . . [r]ather, it is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity" US Airline Pilots Ass'n v. Awappa, LLC, 615 F.3d 312, 317 (4th Cir. 2010)(internal quotation omitted). To state a civil RICO claim, a plaintiff must allege that

the defendants engaged in, or conspired to engage in, a " pattern of racketeering activity."

18 U.S.C. § 1962. A "'pattern of racketeering activity' requires at least two acts of

racketeering activity, one of which occurred after the effective date of [the RICO statute]

and the last of which occurred within ten years ... after the commission of a prior act of

racketeering activity." 18 U.S.C. § 1961(5). To demonstrate a pattern of such activity, the

plaintiff must show "continuity plus relationship," i.e., "that the racketeering predicates are

related, and that they amount to or pose a threat of continued criminal activity." H.J. Inc. v.

Northwestern Bell Telephone Co., 492 U.S. 229, 239(emphasis and internal quotations

omitted).

Here, Plaintiffs insufficiently allege facts which link the Defendants to the new

RICO allegations, including the purported predicate acts. As noted by Defendant BB & T

"[i]ndeed, most of these allegations involve conduct occurring before the R.A. North

entities, which sold lots in these developments to TRM who then sold to Plaintiffs, even

acquired the property that would become Cannonsgate and Summerhouse." (DE-174, pg.

4). The bulk of Plaintiffs' proposed amendments involve unrelated real estate

developments and occurred years before he property that would become Cannonsgate and

Summerhouse was sold to the RAN Defendants. In short, Plaintiffs fail to allege a pattern

of racketeering activity sufficient to support a RICO claim. Indeed, the conclusory group

allegations found in the motions to amend highlight the deficiencies of the Second

Amended Complaint itself.

Therefore, it is RECOMMENDED that Plaintiffs' request to file a third amended

complaint in Thompson, et al., v. Bank of America et al., 7:09-CV-89-H, be DENIED

because the proposed amendments are futile.    *See*, <u>Glaser v. Enzer Biochem, Inc.</u>, 464 F.3d 474, 480 (4th   Cir. 2006) ("Although leave to amend should be freely given when justice so requires, the district court may deny leave to amend for reasons 'such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc."); *see also* <u>Steinburg v. Chesterfield County Planning Com'n</u>, 527 F.3d 377, 390 (4th Cir. 2008).

Plaintiffs have also filed a "motion to correct certain misnomers in [their] Third Amended Complaint" (DE-238).  In light of the fact that their request to file a Third Amended Complaint should be denied, the undersigned also RECOMMENDS that this motion be DENIED.

Finally, Plaintiffs have also filed a motion to vacate voluntary dismissal with prejudice as to Defendant Richard Mace Watts  (DE-211).   On January 15, 2010, Plaintiffs filed a Notice of Dismissal Without Prejudice as to Defendants John Todd and Richard Mace Watts (DE-91).   Later that same day, Plaintiffs corrected an error in their dismissal by filing a Notice of Dismissal With Prejudice as to Defendants James Todd and Richard Mace Watts (DE-92). On January 19, 2010,   Plaintiffs filed a Corrected Notice of Dismissal Without Prejudice As To Defendant John Todd And With Prejudice As To Defendant Richard Mace Watts [and] Notice of Dismissal as to Plaintiff Mark Smith ("Corrected Notice of Dismissal") (DE-93).   The Corrected Notice of Dismissal states that it is being filed to correct a typographical error and "to stand in place of both Document 91 and Document 92."   Plaintiffs sought to withdraw their Notice of Dismissal as to

Defendant Watts on May 25, 2010 (DE-124). A formal motion in support of this request was filed by Plaintiffs on August 18, 2010 (DE-211). In support of this request, Plaintiffs note that they "have filed their Motion for Leave to File Third Amended Complaint which include new facts and allegations based on volumes of newly discovered evidence." Because the undersigned has recommended that the request to file a Third Amended Complaint be denied, it is further RECOMMENDED that Plaintiffs' motion to vacate voluntary dismissal with prejudice as to Defendant Richard Mace Watts also be DENIED.

Likewise, the undersigned notes that Plaintiffs' raise this motion pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. The granting of relief from a final judgment pursuant to Rule 60(b) is an extraordinary remedy that requires the movant to prove exceptional circumstances. *See,* Compton v. Alton S.S. Co., Inc., 608 F.2d 96, 102 (4th Cir. 1979). *See also*, Clayton v. Ameriquest Mortg. Co, 388 F. Supp. 2d 601, 606 (M.D.N.C. 2005) (as initial matter, to proceed on a Rule 60(b) motion the movant must prove: (1) its motion is timely; (2) it has a meritorious defense; and (3) the opposing party will not be unfairly prejudiced by having judgment set aside). Therefore, the undersigned recommends that, in the alternative, this motion be denied for failing to meet this standard.

## II.  2433 South Boulevard, LLC, *et al*., v. Bank of America, *et al*.,7:10-CV-28-H

## Background

Plaintiffs' claims in 2433 South Boulevard, LLC, *et al*., v. Bank of America, *et al*., 7:10-CV-28-H, are very similar. In 2433 South Boulevard, LLC, *et al*., v. Bank of America, *et al*., 7:10-CV-28-H, Plaintiffs have amended their original complaint once (DE-48). In their amended complaint, Plaintiffs seeks relief pursuant to: 1) ILSA; 2)

RICO; 3) NCUDTPA; 4) NCMLA; 5) the South Carolina Licensing Requirements Act; and 6) SCUTPA. (DE-48, pg. 5). In addition, Plaintiffs allege: 1) common law fraud; 2) fraud in the inducement; 3) constructive fraud; 4) breach of fiduciary duty; 5) negligent misrepresentation; and 6) civil conspiracy to commit fraud. *Id* Finally, Plaintiffs also seek relief under the Declaratory Judgment Act, 28 U.S.C. §2201, *et seq*. (2009). *Id.*

The individual Plaintiffs are residents of 20 different states and Washington, D.C. *Id.* at 8-41. As in the previously discussed case, the First Amended Complaint provides relatively little specific detail as to how each individual Plaintiff was wronged. Nonetheless, their allegations shall now be summarized.

In 2433 South Boulevard, LLC, *et al*., v. Bank of America, *et al*., 7:10-CV-28-H, Plaintiffs allege that "[b]eginning in mid 2005, the Defendants acted together in various associations in fact to fraudulently induce the Plaintiffs to purchase property at artificially inflated prices, using high pressure, clearly false sales tactics, rigged appraisals and false promises of early return on investments." (DE-48, pg. 6). The fraud involves the sale of vacant lots in three developments: 1) Summerhouse on Everett Bay ("Summerhouse") located in Onslow County, North Carolina; 2) Cannonsgate on Bogue Sound ("Cannonsgate") located in Carteret County, North Carolina; and 3) Craven's Grant on Winyah Bay ("Craven's Grant") located in Georgetown, South Carolina. *Id.* Summerhouse and Cannonsgate are owned and developed by Defendants, R.A. North Development, Inc. and R.A. North Development I, Inc. ("RAN Defendants"), while Craven's Grant is owned by Defendant Maryville or its assignee Cravensgrant II, LLC. *Id.*

According to Plaintiffs, Defendants misled them as to the value of these developments. *Id.* Specifically, "Defendants scheme involved, among other things, the introduction of the properties at lavish 'launches' and presales deceptively promoted with standardized marketing materials through the mails and wires, the intentional manipulation of property values through misrepresentations, fraud, deception, omissions and unconscionable conduct, and the funding of mortgage loans for the properties, based upon materially false, artificially-inflated and purposefully manipulated appraisals" (DE-48, pg. 7). In addition, Plaintiffs contend that "[t]he scheme was designed to and succeeded at building on the inflated values derived from the improper appraisals (which were based on inappropriate comparables), false recording tactics, kickbacks and other improprieties used by Defendants." *Id.*

As in the previous complaint, rather than make specific allegations against specific Defendants, Plaintiffs lump several Defendants together into categories such as "the Subdivisions", "Lender Defendants", and "Appraiser Defendants". In addition, Plaintiffs' First Amended Complaint makes frequent references to the January 21, 2010 indictment of Defendant Ruffin Poole. Ruffin Poole was charged with extortion, government corruption, and various other federal offenses in a fifty-seven count indictment alleging, *inter alia*, that Poole had used his position within the Governor's Office to influence state agency officials to approve permits needed for the development of coastal property, including Cannonsgate. On April 24, 2010, Poole pled guilty to one count of federal income tax evasion, and the remaining charges were held in abeyance awaiting further performance and fulfillment of his obligations under the plea agreement. *See*,

<u>United States v. Poole</u>, 5:10-CR-21-BO, DE-79, pg. 41.  Plaintiffs' references to Defendant Poole's indictment under these circumstances provide little support for their sweepingly broad allegations.

Regardless, Plaintiffs allege that  Defendant RAN acquired approximately 300 acres in Carteret County, North Carolina, which came to be known as the "Cannonsgate on Bogue Sound" subdivision on July 8, 2005 (DE-48, pg. 49).   The first closing in Phase I in Cannonsgate occurred on October 26, 2005.   Closings on Phase II occurred after December 8, 2005.   <u>Id.</u> at 50.   Sometime in early 2006, Defendant RAN entered into an agreement to acquire 515 acres in Onslow County, North Carolina. This undeveloped parcel was subdivided and came to be known as the "Summerhouse on Everett Bay" subdivision.  <u>Id.</u>

Defendant Maryville acquired property in Georgetown County, South Carolina, which came to be known as the "Craven's Grant" subdivision sometime prior to April 7, 2006.   <u>Id.</u> at 51.   At some point during 2006-2007, Maryville conveyed all or part of its property to an entity known as Cravensgrant II, LLC, a limited liability company wholly owned by Maryville.   <u>Id.</u>

Plaintiffs assert that the first phase of Defendants' scheme "involved creating frenzied demand through a standardized marketing approach that falsely touted the high value and high demand for the properties in the subject developments."  <u>Id.</u>   This marketing approach allegedly "included the dissemination of misleading, deceptive and/or false marketing material to potential purchasers and their agents in the United States through the use of the mail and wires."  <u>Id.</u>   However, Plaintiffs concede that these

marketing materials acknowledged that at least some risk would be involved when investing in the subject developments. *Id.* at 53. Furthermore, Plaintiffs' allege that "[t]he Allen entity salespeople were also instructed to make false statements during the launch events in order to mislead purchasers and create demand." *Id.* at 54. Plaintiffs, do not specifically describe the fraudulent statements made by any particular individual Defendant.

Regardless, Plaintiffs argue that Defendants manipulated the prices in these subdivisions because "it soon became apparent that in the absence of some comparable sales at the inflated prices, the Offers to Purchase they had solicited from new buyers would never meet the Lender Defendants' underwriting requirements because they were over-priced" *Id.* Therefore, various sham contracts for the purchase of these lots were entered into. *Id.* These sham contracts allegedly portrayed the lots as selling at grossly inflated prices. *Id.* Thereafter, the scheme was facilitated by "certain hand picked" appraisers who used the bogus sales as the comparables for the purpose of evaluating the potential sales to new buyers. *Id.* at 56.

Plaintiffs also argue that the "Allen Entities", together with Defendants Wilson and Poole made extraordinary contributions to the reelection campaign of Governor Easley for the purpose of securing favorable securing favorable treatment of the planned subdivisions. *Id.* In this section of their First Amended Complaint, Plaintiffs rely heavily on the previously discussed indictment of Defendant Poole. According to Plaintiffs, the Allen Entities provided kickbacks to governmental employees, including but not limited to Defendant Poole. For example, Plaintiffs allege, "despite the fact that the investment in

Cannonsgate had already been funded and there was no need for additional investors, Poole was permitted to invest $100,000 with a guaranteed return of 30% in less than one year . . . [i]n fact, Poole invested the $100,000 on September 1, 2005 and was paid $130,000 by December 18, 2005." *Id.* at 62. Plaintiffs contend that "[a]s a consequence of providing guaranteed kickbacks to Poole, the Allen Entities were assured that permits would be forthcoming in a quarter of the time required for nearly any other project of its kind." *Id.*

With regard to the so-called "Lender Defendants", Plaintiffs allege:

> All Lender Defendants engaged in improper and/or illegal underwriting practices that were the result of compensation models that awarded compensation to originating loan officers employed by the Lender Defendants based on loan origination amounts and loan volume. Thus loan officers were incentivized by their employers, the Lender Defendants, to engage in improper underwriting practices to increase their individual compensation.
> *Id.* at 71.

Rather than plead with particularity each Defendant's involvement, Plaintiffs baldly assert that "all Lender Defendants knew about and participated in the scheme." *Id.* at 73. Likewise, Plaintiffs also assert "the Lender Defendants were on site for many of the sales pitches made to these Plaintiffs and therefore knew that many, if not most, of the investment purchasers, including the Plaintiffs herein, were relying upon the fraudulent misrepresentations made by [non-parties] TRM, Metro, Premier and Coastal about a return on investment resulting from the resale of property in just weeks or months after the sale to Plaintiffs." *Id.* at 83-84.

Notably, Plaintiffs concede that they obtained loans knowing that they would not be able to repay them based on their income and investment assets. *Id.* at 77-78. Plaintiffs

approached the purchase of a lot as investors, with the intention to resell or flip the property within 6-18 months at a profit. *Id.* at 83. They further admit that they knew that the settlements statements they signed were false because they reflect that Plaintiffs paid a 10% down payment that Plaintiffs admit was not paid. *Id.* at 77. Thus, the Plaintiffs admit on the face of their Complaint the investment risk they took in order try to capture a profit by "flipping" these properties.

In summary, the First Amended Complaint in <u>2433 South Boulevard, LLC, *et al*., v. Bank of America, *et al*.,</u> 7:10-CV-28-H contains the same sweeping and conclusory allegations found in <u>Thompson, *et al*., v. Bank of America *et al*.,</u> 7:09-CV-89-H. Both complaints provide few specific allegations against any individual Defendant.

## Analysis

## Motions to dismiss for failure to effect service

The following Defendants have moved to dismiss Plaintiffs' First Amended Complaint pursuant to Rule 4(m) of the Federal Rules of Civil Procedure for failure to properly effect service[5]: 1) Maryville Partners Inc. and Craven's Grant Homeowners Association (DE-143); 2) Craven Grant Homeowners' Association, Inc. (DE-145); and 3) Berthadale Best (DE-155). On November 15, 2010, the undersigned entered an order extending the time for Plaintiffs to effectuate service upon Defendants until December 15, 2010 (DE-206). Based on that order, it is HEREBY RECOMMENDED that these motions to dismiss (DE's 143, 145, and 155) be DENIED WITHOUT PREJUDICE.

---

5 Several other Defendants also advanced this argument contemporaneously with their 12(b)(6) motions to dismiss. The undersigned recommends that those requests also be denied without prejudice, although the issue is likely mooted by the undersigned's other recommendations.

**Other motions to dismiss**

As in Thompson, *et al*., v. Bank of America *et al*., 7:09-CV-89-H, several defendants in 2433 South Boulevard, LLC, *et al*., v. Bank of America, *et al*., 7:10-CV-28-H have filed motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The standard by which such motions are reviewed has already been discussed. For the following reasons, it is recommended that every referred motion to dismiss be granted.

First, the undersigned reincorporates the analysis and recommendations contained in Thompson, *et al*., v. Bank of America *et al*., 7:09-CV-89-H to the extent they are relevant in 2433 South Boulevard, LLC, *et al*., v. Bank of America, *et al*., 7:10-CV-28-H. Most notably, the undersigned reiterates his finding that, based on the analysis found in Feeley, Goldstein, and Skeels, Plaintiffs' claims fail to meet the Twombly/Iqbal standard.

Plaintiffs' also raise RICO claims in their First Amended Complaint. These claims should be dismissed for the same reasons that Plaintiffs' proposed RICO amendments in Thompson, *et al*., v. Bank of America *et al*., 7:09-CV-89-H were deemed futile. Civil RICO is an extraordinary remedy designed to provide relief against well-established instances of sustained and widespread criminal activity. Synergy Fin., LLC v. Zarro, 329 F. Supp. 2d 701, 712 (W.D.N.C. 2004); Ferguson v. Maita, 162 F. Supp. 2d 433, 439 (W.D.N.C. 2000). The Fourth Circuit "will not lightly permit ordinary business contract or fraud disputes to be transformed into federal RICO claims." Flip Mortg. Corp. v. McElhone, 841 F.2d 531, 538 (4th Cir. 1988); Menasco, Inc. v.

Wasserman, 886 F.2d 681, 683 (4th Cir. 1989) ("RICO is not available for "the ordinary run of commercial transactions"). In order to state a civil RICO claim against any Defendant, Plaintiffs must articulate at least two predicate acts of racketeering that form a "pattern of racketeering." Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 233 (4th Cir. 2004); *see* 18 U.S.C. § 1961(5). The RICO statute was enacted for the purpose of "seek[ing] the eradication of organized crime in the United States." Beck v. Prupis*,* 529 U.S. 494, 496 (2000). Thus, as an initial matter, the undersigned finds that the harms alleged in this case do not "pose a special threat to social wellbeing," and they are not the proper target of a claim under RICO. *See*, Al-Abood v. El- Shamari, 217 F.3d 225, 238 (4th Cir. 2000). Likewise, each of the necessary elements of a RICO claim must also be pled with sufficient specificity to meet the "plausibility" standard under Twombly and Iqbal. *See*, Goldstein, 2010 WL 1252641 at, * 6. Moreover, "'in order to survive a motion to dismiss a RICO claim, a plaintiff must plead the circumstances of the fraudulent acts that form the alleged pattern of racketeering activity with sufficient specificity pursuant to Fed. R. Civ. P. 9(b).'" Williams v. Equity Holding Corp., 245 F.R.D. 240, 243 (E.D. Va. 2007) (*quoting* Menasco, Inc. v. Wasserman, 886 F.2d 681, 684 (4th Cir. 1989). Clearly, "[i]t is not enough for a plaintiff to file a RICO claim, chant the statutory mantra, and leave the identification of predicate acts to the time of trial." Synergy Fin., LLC, 329 F. Supp. 2d at 712 (W.D.N.C. 2004). Plaintiffs' First Amended Complaint generically recites various conduct by "Defendants" in the form of bribes, kickbacks and the transmission of items through the mail and wire. These allegations are not specific enough to satisfy either plausibility standard of Twombly/Iqbal or the heightened pleading standard of Rule 9(b) .

For these reasons, Plaintiffs' RICO claims should be dismissed.

The ILSA claims raised by Plaintiffs in <u>2433 South Boulevard, LLC, *et al*., v. Bank of America, *et al*.,</u> 7:10-CV-28-H should be dismissed for the reasons previously discussed with regard to <u>Thompson, *et al*., v. Bank of America   *et al*.,</u> 7:09-CV-89-H.   Specifically, Plaintiffs' ILSA claims are meritless because,   *inter alia*:   1) Plaintiffs' intent to immediately resell the lots in question renders ILSA inapplicable; and 2) Defendants are not developers or agents under ILSA.     Therefore, Plaintiffs' ILSA claims should be dismissed.

Plaintiffs NCUDTPA, SCUTPA and NCMLA claims should also be dismissed for reasons already discussed in <u>Thompson, *et al*., v. Bank of America   *et al*.,</u> 7:09-CV-89-H. First, most Plaintiffs are not residents of North Carolina or South Carolina and therefore are not entitled to relief.   Furthermore, Plaintiffs fail to allege that Defendants owed or breached a legally cognizable duty to them.

Plaintiffs have also failed to state a proper claim for negligent misrepresentation or general negligence.   Again, the bases for this finding are discussed in detail above in <u>Thompson, *et al*., v. Bank of America   *et al*.,</u> 7:09-CV-89-H.   In brief, any alleged misrepresentations are not properly described, nor do Plaintiffs establish that Defendants owed them any duty.

As also discussed above, Plaintiffs' fraud and conspiracy to commit fraud based claims should be dismissed because they do not satisfy the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure.   Likewise, even assuming *arguendo* that Plaintiffs are deemed to have met the particularity requirement,

they have failed to properly allege the required elements of fraud.

Furthermore, Defendant Cannonsgate Investments ("CGI") and Defendant Lanny Wilson both argue:

> Plaintiffs do not allege that Wilson or CGI promoted or marketed any property Plaintiffs purchased; made any misrepresentations concerning any property Plaintiffs purchased; sold any property Plaintiffs purchased; manipulated appraisals for any property Plaintiffs purchased; or funded mortgage loans for any property Plaintiffs purchased. Indeed, none of the Plaintiffs allege that they had any dealings with Wilson or CGI.

> (DE-168, pg. 2).

The undersigned agrees with this assessment. Only a small portion of Plaintiffs' First Amended Complaint names Defendants CGI or Lanny Wilson, and the majority of those allegations address matters completely unrelated to Plaintiffs' real estate investments. Therefore, this argument serves as an alternate basis for granting the motion to dismiss filed by Defendants CGI and Lanny Wilson (DE-167).

Likewise, Defendant Jennifer C. Parker is named only in the caption of Plaintiff's First Amended Complaint. No allegations against her are contained in the body of the Complaint. Similarly, Defendant Emily Adams is only mentioned in one paragraph of Plaintiffs' First Amended Complaint. That paragraph simply notes that she is a licensed real estate appraiser who does business in North Carolina. Finally, Defendant Woodlands Bank is mentioned in only two paragraphs of the First Amended Complaint. Accordingly, these omissions provide alternate bases for granting the motions to dismiss filed by Defendants Jennifer C. Parker, Emily Adams and Bank of the Ozarks (DE's 169, 216 and 232).

For these reasons, the undersigned finds that the referred motions to dismiss should be granted. Specifically, these motions should be granted for the following reasons: 1) Plaintiffs' allegations do not meet the Twombly/Iqbal standard; 2) Plaintiffs fail to state a RICO claim; 3) Plaintiffs fail to state an ILSA claim; 4) Plaintiffs fail to state a NCUDTPA, SCUTPA or NCMLA claim; 5) Plaintiffs fail to state either a negligent misrepresentation or a general negligence claim; and 6) Plaintiffs' fraud and conspiracy to commit fraud based claims fail to satisfy the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. For reasons already discussed, the undersigned recommends that these dismissals be with prejudice.

### Plaintiffs' motions to amend

As in the companion case, Plaintiffs have also moved to amend (DE-196) their First Amended Complaint in 2433 South Boulevard, LLC, *et al*., v. Bank of America, *et al*., 7:10-CV-28-H. For the reasons discussed above, the undersigned deems the proposed amendments futile and RECOMMENDS that this motion (DE-196) be DENIED.

### III.  Conclusion

Based on the above reasoning, the undersigned hereby RECOMMENDS that:

1)  These actions be consolidated pursuant to Rule 42(a) of the Federal Rules of Civil Procedure;

2) Defendant Branch Banking and Trust Company of South Carolina's motion to dismiss (DE-44) be GRANTED, and that Plaintiffs' claims against Defendant Branch Banking and Trust Company of South Carolina in Thompson, *et al.*, v. Bank of America *et al.*, 7:09-CV-89-H, be DISMISSED WITH PREJUDICE;

3)  Defendant Bank of America's motion to dismiss (DE-47) be GRANTED, and that Plaintiffs' claims against Defendant Bank of America in Thompson, *et al.*, v. Bank of America  *et al.*, 7:09-CV-89-H, be DISMISSED WITH PREJUDICE;

4)  Defendant Maryville Partners, Inc.'s  motion to dismiss (DE-50) be GRANTED, and that Plaintiffs' claims against Defendant Maryville Partners, Inc. in Thompson, *et al.*, v. Bank of America  *et al.*, 7:09-CV-89-H, be DISMISSED WITH PREJUDICE;

5) Defendants R.A. North Development, Inc.'s, R.A. North Development I, Inc.'s, Randolph Allen's, William Allen's, and Southeastern Waterfront Marketing, Inc.'s motion to dismiss (DE-57) be GRANTED and that Plaintiffs' claims against these Defendants in Thompson, *et al.*, v. Bank of America  *et al.*, 7:09-CV-89-H, be DISMISSED WITH PREJUDICE;

6) Defendant Carolina First Bank's motion to dismiss (DE-68) be GRANTED and that Plaintiffs' claims against Defendant Carolina First Bank in *Thompson, et al.*, v. Bank of America *et al.*, 7:09-CV-89-H, be DISMISSED WITH PREJUDICE;

7) Defendant RBC Bank (USA)'s motion to dismiss (DE-71) be GRANTED and that Plaintiffs' claims against Defendant RBC Bank (USA) in *Thompson, et al.*, v. Bank of America *et al.*, 7:09-CV-89-H, be DISMISSED WITH PREJUDICE;

8) Defendant Craven's Grant HOA's motion to dismiss (DE-76) be GRANTED and that Plaintiffs' claims against Defendant Craven's Grant HOA in *Thompson, et al.*, v. Bank of America *et al.*, 7:09-CV-89-H, be DISMISSED WITH PREJUDICE. In the alternative, the undersigned RECOMMENDS that Plaintiffs' claims against Defendant Craven's Grant HOA in *Thompson, et al.*, v. Bank of America *et al.*, 7:09-CV-89-H, be STAYED pending arbitration;

9) Plaintiffs' motions for leave to file a third amended complaint (DE-129) and for leave to amend to correct misnomer (DE-238) in *Thompson, et al.*, v. Bank of America *et al.*, 7:09-CV-89-H, be DENIED;

10) Defendant SunTrust Bank's motion to dismiss (DE-157) be GRANTED and that Plaintiffs' claims against Defendant SunTrust Bank in *Thompson, et al.*, v. Bank of America *et al.*, 7:09-CV-89-H, be DISMISSED WITH PREJUDICE;

11) Plaintiffs' motion to vacate voluntary dismissal with prejudice as to Defendant Richard Mace Watts (DE-211) in *Thompson, et al.*, v. Bank of America *et al.*, 7:09-CV-89-H, be DENIED;

12) Defendant Maryville Partners, Inc.'s motion to dismiss (DE-143) in 2433 South Boulevard, LLC, *et al*., v. Bank of America, *et al*., 7:10-CV-28-H, be DENIED WITHOUT PREJUDICE;

13) Defendant Craven Grant Homeowners' Association, Inc.'s motion to dismiss (DE-145) in 2433 South Boulevard, LLC, *et al*., v. Bank of America, *et al*., 7:10-CV-28-H, be DENIED WITHOUT PREJUDICE;

14) Defendant Bank of America's motion to dismiss (DE-149) be GRANTED and that Plaintiffs' claims against Defendant Bank of America in 2433 South Boulevard, LLC, *et al*., v. Bank of America, *et al*., 7:10-CV-28-H, be DISMISSED WITH PREJUDICE;

15) Defendant Berthdale Best's motion to dismiss (DE-155) in 2433 South Boulevard, LLC, *et al*., v. Bank of America, *et al*., 7:10-CV-28-H, be DENIED WITHOUT PREJUDICE;

16) Defendants Cannonsgate Investment, LLC's and Lanny T. Wilson's motion to dismiss (DE-167) be GRANTED and Plaintiff's claims against Defendants Cannonsgate Investment, LLC and Lanny T. Wilson in 2433 South Boulevard, LLC, *et al*., v. Bank of America, *et al*., 7:10-CV-28-H, be DISMISSED WITH PREJUDICE;

17) Defendant Jennifer C. Parker's motion to dismiss (DE-169) be GRANTED and Plaintiff's claims against Defendant Jennifer C. Parker in 2433 South Boulevard, LLC, *et al*., v. Bank of America, *et al*., 7:10-CV-28-H, be DISMISSED WITH PREJUDICE;

18) Defendants Branch Banking and Trust Company of South Carolina's and Branch Banking and Trust Company's motion to dismiss (DE-189) be GRANTED and Plaintiff's claims against Defendants Branch Banking and Trust Company of South

Carolina's and Branch Banking and Trust Company in 2433 South Boulevard, LLC, *et al.*, v. Bank of America, *et al.*, 7:10-CV-28-H, be DISMISSED WITH PREJUDICE;

19) Plaintiffs' motion for leave to amend to correct misnomer (DE-196) in 2433 South Boulevard, LLC, *et al.*, v. Bank of America, *et al.*, 7:10-CV-28-H, be DENIED;

20) Defendant SunTrust Bank, Inc.'s motion to dismiss (DE-199) be GRANTED and Plaintiff's claims against Defendant SunTrust Bank, Inc. in 2433 South Boulevard, LLC, *et al.*, v. Bank of America, *et al.*, 7:10-CV-28-H, be DISMISSED WITH PREJUDICE;

21) Defendant Suburban Federal Savings Bank's motion to dismiss (DE-203) be GRANTED and Plaintiff's claims against Defendant Suburban Federal Savings Bank in 2433 South Boulevard, LLC, *et al.*, v. Bank of America, *et al.*, 7:10-CV-28-H, be DISMISSED WITH PREJUDICE;

22) Defendant Emily L. Adams's motion to dismiss (DE-216) be GRANTED and Plaintiff's claims against Defendant Emily L. Adams in 2433 South Boulevard, LLC, *et al.*, v. Bank of America, *et al.*, 7:10-CV-28-H, be DISMISSED WITH PREJUDICE;

23) Defendants William Allen's, Southeastern Land Sales, Inc.'s, and Southeastern Waterfront Marketing, Inc.'s motion to dismiss (DE-218) be GRANTED and Plaintiff's claims against Defendants William Allen, Southeastern Land Sales, Inc., and Southeastern Waterfront Marketing, Inc. in 2433 South Boulevard, LLC, *et al.*, v. Bank of America, *et al.*, 7:10-CV-28-H, be DISMISSED WITH PREJUDICE;

24) Defendant Richard Mace Watts' motion to dismiss (DE-224) be GRANTED and Plaintiff's claims against Defendant Richard Mace Watts in 2433 South Boulevard,

LLC, *et al.*, v. Bank of America, *et al.*, 7:10-CV-28-H, be DISMISSED WITH PREJUDICE;

25) Bank of the Ozarks' motion to dismiss (DE-232) be GRANTED and Plaintiff's claims against Defendant Woodlands Bank in 2433 South Boulevard, LLC, *et al.*, v. Bank of America, *et al.*, 7:10-CV-28-H, be DISMISSED WITH PREJUDICE;

SO RECOMMENDED in Chambers at Raleigh, North Carolina on Thursday, February 24, 2011.

WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE